**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: January 14, 2009**

_____
 CRAIG A. GARGOTTA
 UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ISMAEL LONGORIA, | § | CASE NO. 08-10180-CAG |
| | § | |
| Debtor. | § | Chapter 13 |

**MEMORANDUM OPINION
IN SUPPORT OF ORDER GRANTING DEBTOR'S MOTION
FOR TURNOVER OF PROPERTY AND FOR CONTEMPT AND SANCTIONS
FOR VIOLATION OF THE AUTOMATIC STAY**

On November 18, 2008, came on for hearing the Court's Order to Show Cause, ordering Credit Acceptance Corporation ("CAC") to appear and show cause why it has failed to comply with the Court's prior Order Granting Debtor's Motion for Turnover of Property and Motion for Contempt and Sanctions. Counsel for the Debtor and counsel for CAC appeared at the hearing and made arguments and certain factual statements. Specifically, while CAC referred to two affidavits attached to its Response to the Debtor's request for the Show Cause Order, no other testimony or documentary evidence was offered or admitted at the hearing.

Some of the pertinent facts are not disputed, but certain of the facts regarding what notice CAC and its counsel received and when, are unclear. The following are the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

The Debtor filed this Chapter 13 case on February 4, 2008. CAC is a secured creditor of the Debtor, holding a security interest in the Debtor's automobile. CAC has not, however, filed a proof of claim in the case.[1]

On June 2, 2008, the Debtor filed a Motion for Turnover of Property and Motion for Contempt and Sanctions (the "Turnover and Contempt Motion"), in which he alleged that CAC had willfully violated the automatic stay by accepting payments "via auto debit" from the Debtor's personal checking account. *See* Docket Entry # 17. Above the title of the Turnover and Contempt Motion pleading, in 12-point boldface type, is the following notice[2]:

> **THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**
>
> **IF NO TIMELY RESPONSE IS FILED WITHIN TWENTY (20) DAYS FROM THE DATE OF SERVICE, NO HEARING WILL BE HELD AND THE RELIEF REQUESTED IN THE MOTION MAY BE GRANTED WITHOUT A HEARING BEING HELD. A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

Representations in the text of the Turnover and Contempt Motion and in the certificate of service attached to it reflect that CAC was served with that Motion by certified mail, return receipt requested, sent to the address it has listed with the Texas Secretary of State's Office for service of process: Credit Acceptance Corporation, c/o: Corporation Service Company, 701 Brazos St., #1050, Austin Texas 78701. CAC is therefore presumed to have received the Motion. *See **United States***

---

[1] The Debtor, however, did file a claim on its behalf. *See* Fed.R.Bankr.P. 3004 ("If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable."); Docket Entry # 32, Order Sustaining Debtor's Motion to Allow Late Filed Proof of Claim Filed on Behalf of Credit Acceptance Corporation.

[2] The inclusion and the form of this "negative notice" is prescribed by this Court's Local Rule 9014.

*v. Ekong*, 518 F.3d 285, 287 (5th Cir. 2007) ("Proof that a letter properly directed was placed in a U.S. post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed."), quoting ***Beck v. Somerset Techs., Inc.***, 882 F.2d 993, 996 (5th Cir. 1989).

CAC has not denied that it received the Motion. It admits in its Response to the Show Cause Order that "[i]n June 2008, Credit Acceptance learned that the funds it had received . . . had been improperly drawn . . . from the Debtor's account." It is true that CAC's counsel, in his affidavit, asserts that *he* was never served with the Turnover and Contempt Motion or the notice of the hearing on it, even after, CAC alleges, Debtor's counsel had had telephonic contact with CAC's counsel regarding the matter. *See* Exh. B, Declaration of Stephen W. King to Docket Entry # 42, CAC's Response to Debtor's Motion to Show Cause and Request for Sanctions for Failure to Comply. The evidence is inconclusive as to exactly when that contact occurred as compared to the various pleadings and notices that Debtor's counsel served on CAC,[3] but it is clear (and CAC readily admits) that counsel for CAC has never entered any appearance in this case on its behalf. Moreover, while direct contact with a represented party outside of litigation may have some attorney conduct implications under state law, none of which are raised here, it is clear that service on CAC's authorized agent for service of process, rather than one of its counsel, was the proper and required service for the Turnover and Contempt Motion under Federal Rules of Bankruptcy Procedure 9020, 9014(b) and 7004, discussed below. *See* ***In re Teknek, LLC***, 512 F.3d 342, 346 (7th Cir. 2007)

---

[3] In general, CAC's counsel's artfully-phrased affidavit testimony is conspicuous in its failure to specify when and how he actually did first receive "notice of this matter." For example, he states that he "*later* received a copy of the order" (emphasis added), but provides no earlier reference point in time that could be used to determine exactly what he knew and when. *See* Exh. B, Declaration of Stephen W. King to Docket Entry # 42, CAC's Response to Debtor's Motion to Show Cause and Request for Sanctions for Failure to Comply.

3

("Mailing a document to an attorney does not satisfy the requirement of personal service on a putative litigant."), citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

Even if service on CAC's counsel had also been required, evidence that he was not served is insufficient to rebut the presumption that CAC itself received the Motion and had notice. Neither CAC's counsel nor its representative even assert, let alone establish, in their affidavit testimony that CAC itself was not timely served and/or did not receive notice. CAC presented no other evidence regarding the notice it received or did not receive. Accordingly, it has failed to rebut the presumption that it had notice. *See Ekong*, 518 F.3d at 287 (noting that even an "addressee's 'bare assertion of non-receipt' is insufficient to rebut the assumption."), quoting *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 421 (5th Cir. 2007).

CAC did not timely file a response to the Turnover and Contempt Motion; in fact, it has never filed a response to it. Nevertheless, as is the Court's practice on this sort of motion, on June 25, 2008, a hearing was set on the Turnover and Contempt Motion to be held on August 12, 2008.

Notice of that hearing was served on CAC, both at the address listed on the Debtor's matrix and at the address listed on the Turnover and Contempt Motion. *See* Docket Entry # 22, Certificate of Service of the Notice of Hearing, filed by the Bankruptcy Noticing Center. Again, CAC has not denied that it received that notice of hearing, nor presented any evidence it was not served as stated in the certificate of service.

The hearing was conducted on August 12, 2008, but CAC failed to appear. The Court considered the undisputed evidence and the arguments presented by counsel for the Debtor, and granted the Turnover and Contempt Motion. On August 29, 2008, it entered an Order Granting Debtor's Motion for Turnover of Property and Motion for Contempt and Sanctions (the "Contempt Order"), in which it recited its findings and conclusions that CAC had "willfully and deliberately violated the automatic stay of 11 U.S.C. § 362 by wrongfully withdrawing post-petition two

payments from the Debtor's bank account in the amount of $456.85 each." The Court further found that CAC's actions caused the Debtor emotional and financial distress, and ordered that CAC return $1,073.70 (for the two improperly withdrawn payments and for NSF fees caused by those withdrawals), pay an additional $1,000 as sanctions directly to the Debtor, and pay to Debtor's counsel $1,650 as reimbursement for his attorneys fees in connection with the matter. The Contempt Order explicitly specified where and how the payments were to be made, and set an exact deadline (twenty days from the date of entry of the Order, which was August 29, 2008) for making the payments.

The Contempt Order was served by the Bankruptcy Noticing Center on August 31, 2008, on CAC at the address listed on the Debtor's matrix. *See* Docket Entry # 28, Certificate of Service by the Bankruptcy Noticing Center. At the hearing, the Court had expressed concerns about the adequacy of the notice to the CAC, and so it included in its Contempt Order a requirement that counsel for the Debtor serve a copy on CAC not only at the addresses listed in the Debtor's matrix and on the Turnover and Contempt Motion, but also at an address used by Debtor's counsel in his May 5, 2008, correspondence with CAC advising it to cease its alleged violations of the automatic stay (i.e., Credit Acceptance Corporation, Attn: Legal Department, 25505 W. 12 Mile Rd., Southfield, Michigan 48234). On September 2, 2008, Debtor's counsel filed a certificate of service in which he represented that he had that day served the Contempt Order as directed, and reflecting that that certificate of service had also been served, by certified mail, return receipt requested, on CAC at the three addresses described above. *See* Docket Entry # 29, Certificate of Service by Debtor's counsel.

Again, CAC has not denied that it received copies of the Contempt Order. The return receipts that were served by Debtor's counsel with the Contempt Order show it was signed for as "received" at each of CAC's three addresses on September 3rd, 4th, and 8th. *See* Exhibit A to

5

Debtor's Motion to Show Cause and Request for Sanctions for Failure to Comply, Docket Entry # 38. CAC has not denied the authority of the persons signing those return receipts on its behalf.

No motion to reconsider the Contempt Order or appeal of that Order has been filed by CAC. It nevertheless failed to make the payments as directed by the Court in the Order. It did, however, attempt to turn over to the Chapter 13 Trustee a "refund check," payable to the Debtor, in the amount of $909.70. *See* Exhibit 1 to Exhibit B to Docket Entry # 42, CAC's Response to Debtor's Motion to Show Cause and Request for Sanctions for Failure to Comply. While that check is dated June 24, 2008, CAC's cover letter transmitting it is dated September 11, 2008, and directs that the check not be cashed "until the parties have fully executed a Settlement Agreement." *See* id.

On October 22, 2008, the Debtor filed a Motion to Show Cause and Request for Sanctions for Failure to Comply, in which he requested the Court to issue an order to CAC requiring it to appear at a hearing and show cause why it should not be held in contempt and sanctioned for failing to comply with the Contempt Order. Specifically, the Motion to Show Cause alleged that CAC was refusing to pay the amounts previously ordered by the Court and claiming through its counsel that it was required only to return the two payments it had received. Debtor requested sanctions be imposed in the amount of $500 per day until CAC fully complied with the Contempt Order, plus $550 as reimbursement of Debtor's attorneys fees for prosecuting the Motion to Show Cause.

The Court entered an order on the Motion to Show Cause on October 29, 2008, which Order set a hearing on November 18, 2008, on the Motion to Show Cause and Request for Sanctions. On November 13, 2008, CAC filed a response to that Motion (the "Response"), its first appearance in this case. As stated above, CAC subsequently appeared at the hearing through its counsel, and this Court took the Motion to Show Cause and Request for Sanctions under advisement at the conclusion of the hearing.

6

CAC in its Response and in arguments at the hearing raises as a defense to the Motion to Show Cause and Request for Sanctions that the Contempt Order "is void because the Debtor failed to serve Credit Acceptance with process." It also claims that it did not violate the automatic stay but instead "consistently sought to return the funds in question to the Debtor–only to be met with resistance, and an improper attempt to extract additional funds from it." The Court will first address the matter of the propriety and adequacy of service in this case, both because it is a threshold issue and because, as further discussed below, the Court's ruling on that issue forecloses any argument with respect to the second issue.

## Form and Adequacy of Service

The party challenging the sufficiency of service has the burden to establish a prima facie error in service. *In re Villar*, 317 B.R. 88, 94 (9th Cir. BAP 2004), citing *In re Webb*, 212 B.R. 320, 322 n.1 (8th Cir. BAP 1997). However, "[t]he litigant attempting to effect service is responsible for proper service and bears the burden of proof." *Id.* at 93-94, citing *Citicorp Mortgage, Inc. v. Brooks (In re Ex-Cel Concrete Co.)*, 178 B.R. 198, 203 (9th Cir. BAP 1995) and *In re Rae*, 286 B.R. 675, 677 (Bankr. N.D. Ind. 2002).

Federal Rule of Bankruptcy Procedure 9020 governs contempt proceedings in bankruptcy, and provides that "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest."[4] Rule 9014, governing contested matters, in turn provides:

> (a) Motion. In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be

---

[4] Similarly, considered as a motion under 11 U.S.C. § 362(k) for damages for violation of the automatic stay, the Turnover and Contempt Motion was a contested matter governed by Rule 9014. *See In re Hildreth*, 392 B.R. 490 (Bankr. M.D. Ala. 2007) (motions for damages for violation of the stay are contested matters and do not require the filing of an adversary proceeding); *accord, In re Timbs*, 178 B.R. 989 (Bankr. E.D. Tenn. 1994).

7

> afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise.
>
> (b) Service. The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004. Any paper served after the motion shall be served in the manner provided by Rule 5(b) F. R. Civ. P.

Thus, according to the express terms of Rules 9020 and 9014, a contempt proceeding is initiated by the filing of a motion, which must be served in the same way as a summons and complaint are required to be served under Rule 7004. Rule 7004, which incorporates most of Federal Rule of Civil Procedure 4 by reference, expressly permits that "service may be made within the United States by first class mail postage prepaid . . . [u]pon a domestic . . . corporation . . . by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." There is no dispute in this case that service of the Turnover and Contempt Motion was made in the manner provided under Rule 7004 for service of a summons and complaint. Rather, CAC argues that the Turnover and Contempt Motion must have been served *with* a summons for the Court to exercise personal jurisdiction over it. Because the Court lacked personal jurisdiction, CAC argues, the Contempt Order is void and cannot be enforced. *See* **Recreational Props., Inc. v. Southwest Mortgage Serv. Corp.**, 804 F.2d 311, 314 (5th Cir. 1986) ("If a court lacks jurisdiction over the parties because of insufficient service of process, the judgment is void and the . . . court must set it aside.").

In its Response, CAC cites in support of its argument that service of a summons is required **Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.**, 526 U.S. 344 (1999), **Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.**, 484 U.S. 97 (1987), **McGuire v. Sigma Coatings, Inc.**, 48 F.3d 902 (5th Cir. 1995), and **Way v. Mueller Brass Co.**, 840 F.2d 303 (5th Cir. 1988). These cases all

8

involved traditional, two-party litigation in federal district court, where state court procedural rules or Federal Rule Civil Procedure 4 undisputedly applied and expressly required service of a summons to bring a party into the litigation. None involved the unique, multi-party proceeding that bankruptcy is. None addressed a situation where another statute or rule, such as Bankruptcy Rules of Procedure 9014, 9020, and 7004, expressly authorized a procedure in lieu of service of a summons.

Unlike the cases CAC cites, the service accomplished in this case strictly complied with all the applicable Rules. "Although not statutory, the Supreme Court promulgated the Federal Bankruptcy Rules pursuant to authority granted by Congress under 28 U.S.C. § 2075 (1993)." **In re Ain**, 193 B.R. 41, 44 (D. Colo. 1996). That statute provides, in pertinent part:

**Bankruptcy rules**

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.

Such rules shall not abridge, enlarge, or modify any substantive right.

A Rule "[p]rescribing the manner in which a defendant is to be notified that a suit has been instituted against him, . . . relates to the 'practice and procedure of the . . . courts'" and so complies with the requirement of the Bankruptcy Rules Enabling Act (28 U.S.C. § 2075) that it "shall not abridge, enlarge or modify any substantive right." *See* **Hanna v. Plumer**, 380 U.S. 460, 464 (1965) (addressing the service requirements of Fed.R.Civ.P. 4(d)(1) and referring to the identical language in the Rules Enabling Act applicable to the Federal Rules of Civil Procedure, 28 U.S.C. 2072,[5] and

---

[5] That statute provides:

**Rules of procedure and evidence; power to prescribe**

(a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts

9

quoting *New York Life Ins. Co. v. Bangs*, 103 U.S. 435, 439 (1880); *see also* **Ain**, 193 B.R. at 44 (finding that "[t]he Bankruptcy Rules . . . have the force and effect of law" because "[c]ourt rules are presumed to be within the guidelines of their enabling statute"), citing **Hanna v. Plumer**, 380 U.S. at 471; *accord*, **In re Mgmt. Data Servs., Inc.**, 43 B.R. 962, 966-67 (Bankr. W.D. Wash. 1984) ("Rules are entitled to a presumption that they were promulgated within the proper authority of the Supreme Court and do not affect substantive rights."). Thus, "[w]hen a situation is covered by one of the Federal Rules, . . . the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, [the U.S. Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." **Hanna v. Plumer**, 380 U.S. at 471; **Mgmt. Data Servs.**, 43 B.R. at 966.

On facts virtually identical to those in this case, the Seventh Circuit Court of Appeals in **Smith v. Albert (In re Smith)**, 111 F.3d 133 (7th Cir. 1997) (table, text available at 1997 WL 174101), affirmed the bankruptcy court's denial of a creditor's motion to set aside a default order awarding the debtor sanctions for a violation of the automatic stay. Like CAC, the creditor in **Smith** argued that the bankruptcy court had no personal jurisdiction over it because the debtor's motion had not been served with a summons. The Court of Appeals summarily rejected that argument, holding that under the plain language of applicable Rules (9014 and 7004) service of the motion in the manner specified under those Rules was valid and sufficient, and that the bankruptcy court therefore had personal jurisdiction over the creditor.

---

(including proceedings before magistrate judges thereof) and courts of appeals.

(b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

(c) Such rules may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title.

In addition to the cases CAC cited in its Response, its counsel at the hearing on the Motion to Show Cause cited *In re Teknek, LLC*, 512 F.3d 342 (7th Cir. 2007), where Seventh Circuit Court of Appeals again addressed contempt proceedings in bankruptcy, and specifically contempt against a "non-party" in bankruptcy. The Court there decided whether the bankruptcy court had the authority to hold a former representative of the debtor in contempt for withholding information about the debtor's assets. Counsel for CAC relies heavily on the Court's statements that:

> Someone who has never been served with process does not forfeit any issue by failing to appear; there is no need to appear until service has been accomplished. A person not served with process is entitled to ignore the proceeding without any risk of giving up a legal entitlement.
> \* \* \*
> Hamilton was not served with process and did not appear by counsel at the hearing; she therefore is not a party. The bankruptcy judge lacked authority to hold her in contempt of court.

*Id.* at 346.

However, the Court in *Teknek* did *not* conclude that service of the motion for contempt alone, in accordance with Bankruptcy Rules 9014 and 7004, was inadequate. On the contrary, appellant argued and the Court agreed, that where a person is "not a party to the bankruptcy[, that person] cannot be held in contempt until she has been served with process *in a manner that complies with Fed.R.Bankr.P. 9014*." *Id*. at 344 (emphasis added). Thus, all the Court in *Teknek* held was that service of a motion for contempt upon a person who was not a party to the bankruptcy must comply with Federal Rule of Bankruptcy Procedure 9014, which requires service of a motion initiating a contested matter "in the manner provided for service of a summons and complaint by Rule 7004." In *Teknek*, unlike this case, the person held in contempt had *not* been served in accordance with those Rules, which required personal service on her because she was in a foreign country. There is no discussion in *Teknek* of any requirement that a summons, not required by the Rules, be served with the contempt motion.

11

"A party contending that a rule violates substantive rights bears a heavy burden of proof." *Mgmt. Data Servs.*, 43 B.R. at 966. CAC has failed to sustain that burden, and for all the reasons stated above, this Court finds and concludes that service in this case was proper and adequate, and sufficient to support the Court's exercise of personal jurisdiction over CAC, because that service complied with the applicable Rules, which are "the standard against which the . . . Court should . . . measure[ ] the adequacy of the service." *Hanna v. Plumer*, 380 U.S. at 464.

This conclusion is particularly appropriate considering that there is no argument that CAC did not have actual notice of the proceedings against it. *See generally* *Wallace v. Shapiro (In re Shapiro)*, 265 B.R. 373, 378 (Bankr. E.D. N.Y. 2001) (addressing Rule 7004(b)(9)'s requirement of service on not only debtor but debtor's attorney, and noting that "the standards for service on individuals and corporations are to be liberally construed to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice"), quoting *Teitelbaum v. Equitable Handbag Co. (In re Outlet Dep't Stores, Inc.)*, 49 B.R. 536, 540 (Bankr. S.D. N.Y. 1985).

However, CAC correctly points out that actual notice does not take the place of valid service; actual notice does, however, bear on whether the Court's exercise of personal jurisdiction violates the Fifth Amendment's due process requirements. *See generally* *Johnson v. Investacorp, Inc.*, 1990 WL 25034, at *1-2 (N.D. Tex.) ("In conferring nationwide jurisdiction [in bankruptcy proceedings], however, Congress could not alter the due process limits on a court's power provided for in the Fifth Amendment,[6] and as in any case of personal jurisdiction, these limits must be observed."), citing *Entek Corp. v. Southwest Pipe & Supply Co.*, 683 F.Supp. 1092, 1099-1101 (N.D. Tex. 1988).

---

[6] The Fifth Amendment of the U.S. Constitution provides that "no person shall be ... deprived of life, liberty, or property without due process of law."

12

"Procedural due process mandates that a litigant receive notice and have an opportunity to be heard." *Scott v. Fort Ord Gen. Credit Union (In re G. Weeks Sec. Inc.)*, 5 B.R. 220, 226 (Bankr. W.D. Tenn. 1980); *see also* Kent Sinclair, *Service of Process: Rethinking the Theory and Procedure of Serving Process under Federal Rule 4(c)*, 73 Va. L.Rev. 1183 (October 1987) ("service of process . . . serves two fundamental goals: to provide a defendant with notice of the existence of a choate claim against him and to allow him an opportunity to be heard in its disposition"). "If the notice requirement of the due process clause is not satisfied, the order is void." *Ex- Cel Concrete,* 178 B.R. at 203.

The notice that is required must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

There is no doubt in this case that CAC had actual notice of the Contempt and Turnover Motion, the hearing on it, and the Contempt Order granting it. Included in the Contempt and Turnover Motion and served on CAC in accordance with Rule 7004, was the prominent, boldface "negative notice" prescribed by this Court in its local rules.[7] The Motion with that notice thus identified the Court and the parties, the name and address of the Debtor's attorney, the time CAC had to respond and defend the Motion, and the consequences of a failure to do so. In addition, CAC was served with an official Notice of Hearing, issued by Clerk and stating when and where CAC should appear to defend the Contempt and Turnover Motion. In comparison, a summons must:

(A) name the court and the parties;
(B) be directed to the defendant;
(C) state the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff;
(D) state the time within which the defendant must appear and defend;

---

[7] While the notice is officially sanctioned by the Court, it does not, admittedly, bear the signature of the clerk and the Court's seal, as required of a summons under Rule 4(a).

13

      (E)    notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;
      (F)    be signed by the clerk; and
      (G)    bear the court's seal.

Fed.R.Civ.P. 4(a). The negative notice in the Turnover and Contempt Motion and the Notice of Hearing, considered with the Motion itself, satisfy virtually all of the requirements of a summons contained in Rule 4(a). *See In re Parker*, 392 B.R. 490, 496 (Bankr. D. Utah 2008) (considering the sufficiency of service of the debtor's motion for sanctions for violation of the automatic stay, and noting that "[i]n effect, in a contested matter, the notice of hearing is treated as a summons and the motion is treated as a complaint").

Even where the Rules governing contempt proceedings are not strictly followed, so long as the Constitutional requirement of due process is satisfied, contempt sanctions will not be set aside. *See e.g.,* **Placid Refining Co. v. Terrebonne Fuel and Lube, Inc. (*In re Terrebonne Fuel and Lube, Inc.*)**, 108 F.3d 609, 613-14 (5th Cir. 1997) ("Placid was not denied due process under Bankruptcy Rule 9020 [because, a]lthough the bankruptcy court did not strictly follow this rule, Placid was given the constitutionally required notice and an opportunity to be heard before being sanctioned"), citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) ("civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard"); **G. Weeks Sec.***,* 5 B.R. 220 (holding that, where it was uncontroverted that defendant received actual notice of bankruptcy proceeding by mail which was authorized under former Bankruptcy Rule of Procedure 704 and where defendant also had an opportunity to be heard, the requirements of procedural due process were satisfied).

Based on the foregoing, the Court finds that CAC had notice and an opportunity to be heard, and its Constitutional due process rights are not violated by finding the Contempt Order to be valid and enforceable.

### Violation of the Automatic Stay

"It is too firmly established to admit of debate that an injunction issued by a court having subject matter and personal jurisdiction must be obeyed, regardless of the ultimate validity of the order." ***In re Hipp, Inc.***, 5 F.3d 109, 113 (5th Cir. 1993). Inasmuch as this Court had not only subject matter jurisdiction but also personal jurisdiction over CAC when it ruled on the Turnover and Contempt Motion and issued the Contempt Order, CAC was bound to obey that Order and turn over the funds and make the payments specified therein. It cannot now argue that the Court erred in ruling on the Turnover and Contempt Motion, by asserting that it did not violate the stay because rather than CAC, "True Pay," an alleged third party, was responsible for the withdrawals from the Debtor's account, and/or that CAC attempted to return the payments it received in violation of the stay. Out of an abundance of caution, however, the Court finds that even if it were to reach the merits of these arguments, considering all the evidence presented in light of the applicable law, the Court would find that CAC has failed show the Contempt Order is erroneous.

First, CAC's argument that the Contempt Order is erroneous because of True Pay's alleged role fails. CAC acknowledges it received the post-petition payments on its pre-petition claim. In ***In re Hellums***, 772 F.2d 379 (7th Cir. 1985), the Court held that a creditor's post-petition acceptance of payments on a pre-petition debt made by post-petition automatic payroll deductions violated the automatic stay and required such creditors "to obtain some positive indication that debtors intend to voluntarily assume their pre-petition debts" before accepting such post-petition payments. In support, the Court cited the Congressional intent behind the automatic stay:

15

> One of the basic policies promoted by the stay is the halting of all collection efforts to permit the bankrupt a more effective financial rehabilitation (or "fresh start"). An automatic wage assignment that lulls an unthinking debtor into paying-off a dischargeable debt defeats this purpose no less than threats and intimidation from sophisticated creditors. Congress broadly sought to prevent creditors "from attempting in any way to collect a prepetition debt" (emphasis added), and expressed special concern for "[i]nexperienced, frightened, [and] ill-counseled debtors . . .." Such debtors are precisely the sort who would not know to contact their employers to halt automatic wage assignments in satisfaction of pre-petition debts.

*Id.* at 381. The attempt by CAC, an experienced maker of consumer auto loans, to insulate itself from responsibility by claiming the Debtor had the obligation to contact True Pay if he wanted to stop the automatic payments, presents exactly the type of situation that Congress meant the automatic stay to address by broadly prohibiting "creditors from attempting *in any way* to collect a prepetition debt" in order to "prevent[ ] the evasion of the purpose of the bankruptcy laws by sophisticated creditors." *Id.*, quoting H.R.Rep.No. 595, 95th Cong. 1st Sess. 342 (1977) (emphasis added).

As to CAC's other argument, that it should not be held in contempt because it tried to return the payments it received as soon as it learned of the automatic stay, the assertions of CAC's counsel are contradicted by Debtor's counsel's statements regarding his conversation(s) with CAC's counsel, and by the date on the letter sent by CAC's counsel with the check to the Trustee. Given that CAC presented Mr. King's testimony only by affidavit, the Court was not given the opportunity to assess the credibility of CAC's counsel's testimony on the issue as it was Debtor's counsel's testimony, which it finds to be credible. Further, the fact that the return of the payments was conditioned on the Debtor's forgiveness of the remainder of his Court-awarded damages negates any mitigating effect CAC's tender of the funds might have had.

## Conclusion

The Court finds and concludes that sanctions should be imposed on CAC for its failure to fully and timely comply with the Contempt Order. In particular, the Court finds that, while CAC

16

attempted to pay $909.70 prior to the deadline of September 18, 2008, that payment was not only less than the $3,723 ordered to be paid by that date, but was also conditioned on full settlement of all amounts owed pursuant to the Contempt Order. Moreover, that check was returned to CAC, so it has not paid any of what was ordered to have been paid. Therefore, the Court finds that the Debtor's request for Sanctions in his Motion to Show Cause and Request for Sanctions should be granted, to the following extent:

(1) CAC should be ordered to pay all amounts ordered to be paid in the Contempt Order, per its terms, no later than 20 days after entry of this Order;

(2) CAC should be ordered to pay, as further sanctions for failure to comply with the Contempt Order, the sum of $3,050, being $50.00 per day from September 18, 2008 (the date the payments were originally ordered to have been made), until November 18, 2008 (the date of the hearing on the Court's Show Cause Order); and

(3) CAC should be ordered to pay the Debtor's additional attorneys fees in prosecuting this matter, which the Court finds to be reasonable, in the amount of $550.00.

The Court will enter a separate order in conformance with these findings and conclusions.

# # #

n:\WPDOCS\OPINIONS\Longoria\final draft.wpd

08-10180-cag Doc#45 Filed 01/14/09 Entered 01/14/09 13:50:08 Main Document Pg 18 of 18

n:\WPDOCS\OPINIONS\Longoria\final draft.wpd